# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMAVIS ANTHOWN COMUNDOIWILLA,<br><br>        Plaintiff,<br><br>  v.<br><br>R. LILES,<br><br>        Defendant. | Case No. 1:10-cv-00845 AWI DLB PC<br><br>FINDINGS AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 37] |

Plaintiff Lamavis Anthown Comundoiwilla ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. The action is proceeding on Plaintiff's May 13, 2010, complaint against Defendant Liles for violation of the Free Exercise Clause of the First Amendment and for violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[1]

Defendant filed a motion for summary judgment on April 10, 2013. Plaintiff opposed the motion on May 8, 2013, and Defendant filed a reply on May 15, 2013. The motion is submitted upon the record without oral argument. Local Rule 230(l).

---

[1] In his motion, Defendant also addresses a potential claim under the Fourteenth Amendment. Plaintiff responds to Defendant's arguments in his opposition and also, for the first time, mentions violations of due process and equal protection. However, the Court did not find that the complaint stated a claim under the Fourteenth Amendment. The Court's screening decisions control and a party may not amend claims by way of an opposition to a motion for summary judgment. E.g., Fossen v. Blue Cross and Blue Shield of Montana, Inc., 660 F.3d 1102, 1115 (9th Cir. 2011); Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1079-80 (9th Cir. 2008). In addition, as correctly stated by Defendant, Plaintiff's claims are appropriately analyzed under the First Amendment and RLUIPA.

## I. LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial, and Plaintiff's

filings must be liberally construed because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is a California state prisoner. The events at issue occurred while Plaintiff was incarcerated at the California Correctional Institution ("CCI") in Tehachapi, California. Plaintiff sues Defendant Liles solely in his individual capacity as to his federal claims presented herein.

Plaintiff alleges that on or about March 19, 2004, Defendant Liles ordered Officer M. Bravo to henceforth not release Plaintiff from the housing unit to attend Friday Jumu'ah prayer services. Plaintiff confronted Defendant regarding these orders. Defendant Liles stated he was an active duty Reservist anticipating that his unit would be deployed to Iraq, and that he was going to be fighting Muslims. Defendant Liles further stated that he hated Muslims because of the events surrounding the September 11th terrorist attacks, and that as long as he was on the "A" yard, he would make sure that Plaintiff would never attend Friday Jumu'ah prayer services again. Plaintiff was nonetheless permitted to attend any other non-Islamic religious services on the "A" facility. From March 19, 2004, until he was transferred to Calipatria State Prison, Plaintiff was not permitted to attend Friday Jumu'ah prayer services.

Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 to declare the acts and omissions of Defendant Liles violated Plaintiff's First Amendment right to freely exercise his religion. He seeks an award of compensatory damages in the amount of five hundred thousand dollars ($500,000), and an award of punitive damages in the amount of five hundred thousand dollars ($500,000).

## III. UNDISPUTED MATERIAL FACTS

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") serving a sentence of 47 years to life for convictions of kidnap and robbery. Pl.'s Dep. 13:8-15. He is an Orthodox Muslim. Pl.'s Dep. 28:14.

Defendant Liles is employed by CDCR. Liles Decl., ¶ 2. In March of 2004, he served as a Yard Sergeant on Facility A at California Correctional Institution ("CCI") in Tehachapi. Liles Decl., ¶ 3. Defendant Liles was an Army Reservist who deployed with his unit in mid to late May 2004

3

until January 2, 2006. Liles Decl., ¶¶ 13, 14. Defendant Liles resumed his post as Yard Sergeant upon his return on January 2, 2006. Liles Decl., ¶ 14.

Plaintiff arrived at CCI in 2003. Pl.'s Dep. 51:11-14; 52:17. Plaintiff had been permitted to attend Jumu'ah prayer services until such time that he was placed on C-Status. Pl.'s Dep. 51:2 – 52:11; 52:16-25. Plaintiff was placed on C-Status for continually violating grooming policies. Pl.'s Dep. 66:11-21.

"C-Status" is short for "Confinement Status," which is a programming restriction limiting an inmate's time outside of his cell. Liles Decl., ¶ 7. Inmates are placed on C-Status by a Unit Classification Committee when an inmate has repeated programming failures. Liles Decl., ¶ 7. Defendant Liles did not place Plaintiff on C-Status. Liles Decl., ¶¶ 4, 7, 10. Between 2004 and 2006, the vast majority of Facility A inmates were maximum security inmates with high classification scores on a Level IV yard who, like Plaintiff, were returning to the mainline after serving terms in the Secured Housing Unit because of serious rules violations. Liles Decl., ¶ 8; Pl.'s Dep. 88:4-15. For such inmates, the traditional credit loss sanctions proved to be ineffective in curtailing the frequency and level of lawlessness. Liles Decl., ¶ 8. The restrictions placed on inmates on C-Status are designed to limit the movements of those inmates who had expressed or demonstrated an unwillingness to comply with institutional regulations. Liles Decl., ¶ 9. An inmate who refuses to comply with the regulations presents a threat to the safety and security of prison staff, other inmates, and the institution. Liles Decl., ¶ 9.

Plaintiff was unable to attend Jumu'ah prayer services for approximately two years as a result of his C-Status. Pl.'s Dep. 46:15-23; Pl.'s Compl., p. 7, ¶ 9.

Plaintiff exhausted his administrative remedies prior to filing the instant action. Pl.'s Dep. 93:9-94:5; Pl.'s Compl., p. 6, ¶ 5.

Correctional Officer Bravo advised Plaintiff that he would not be released from his cell to attend Jumu'ah services on Fridays because Defendant Liles had informed her that no C-Status inmates would be allowed to attend religious services. Pl.'s Dep. 55:11-25; Liles Decl., ¶ 6. When Plaintiff approached Defendant Liles about this, Defendant Liles advised him that no C-Status inmates could go to services. Pl.'s Dep. 94:20-25.

4

During the time Plaintiff was denied the opportunity to attend Jumu'ah prayer services, a Muslim chaplain was available to conduct cell-side services if requested. Pl.'s Dep. 75:18-23; Liles Decl. ¶¶ 11, 12. A Muslim chaplain would walk the buildings and Plaintiff could speak with him. Pl.'s Dep. 75:18-25.

During the time Plaintiff was denied the opportunity to attend Jumu'ah prayer services, he was permitted to pray in his cell five times a day and keep a Quran, as required by his religion. Pl.'s Dep. 34:9-19, 36: 9-19.

During the time Plaintiff was denied the opportunity to attend Jumu'ah prayer services, he would conduct the Jumu'ah prayer services within his own cell. Pl.'s Dep. 48:1-7, 85:19-86:7.

While Plaintiff was on C-Status, he was always permitted to participate and celebrate in the Muslim holidays of Ramadan and the two festivals of Eid. Pl.'s Dep. 79:13-25, 81:14-19, 82:7-10.

In 2006, Plaintiff was transferred out of CCI to Calipatria State Prison at which point he was no longer on C-Status. Pl.'s Dep. 16:23-24, 45:5-16, 89:13-15.

Plaintiff has sued Defendant Liles solely in his individual capacity, not in his official capacity. Pl.'s Compl., p. 6, ¶ 6, p. 9, ¶ 13.

## IV.     DISCUSSION

### A.     Free Exercise of Religion

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., amend. I. Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by* Shakur, 514 F.3d at 884-85.

However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal

system.'" O'Lone, 482 U.S. at 348 (quoting Price v. Johnson, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060 (1948)). "To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 482 U.S. at 349. Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." Id. A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." Id. at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." Id. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.

Plaintiff complains that Defendant Liles substantially burdened Plaintiff's practice of his religion by barring him from congregational Jumu'ah prayer services. It is undisputed that Plaintiff was placed on C-Status by a Unit Classification Committee and not by Defendant Liles. Further, there is no dispute that as a result of his placement on C-Status, Plaintiff was not allowed to attend Jumu'ah prayer services. As Plaintiff was informed by Correctional Officer Bravo, this was because Defendant Liles had directed that no C-Status inmates could attend services. Therefore, it is undisputed that Defendant Liles' decision to restrict C-Status inmates from attending services resulted in burdening Plaintiff's practice of his religion by preventing him from engaging in conduct that he believed was important to his faith.

Nevertheless, it is undisputed that inmates are placed on C-Status for repeated programming failures. Defendant submits that restrictions placed on C-Status inmates are designed to limit their movements because they had expressed or demonstrated an unwillingness to comply with regulations, and traditional credit loss sanctions had proven ineffective in curtailing the frequency and level of lawlessness; as such, they present a threat to the safety and security of prison staff, other

inmates, and the institution.  Plaintiff submits no admissible evidence to place this fact in dispute.  Fed. R. Civ. P. § 56(c)(2).

Plaintiff attempts to dispute the fact that restrictions could be placed on C-Status inmates by citing 15 Cal. Code Regs. § 3044.  Plaintiff argues that restrictions are not permissible with respect to C-Status inmates.  However, 15 Cal. Code Regs. § 3044(f)(2) clearly states that such privileges may be restricted with respect to C-Status inmates.  15 Cal. Code Regs. § 3044(f)(2)(D) provides that yard access may be limited by local institution and facility security needs.  Thus, Plaintiff's contention that Defendant Liles acted beyond his authority in restricting access to C-Status inmates is unfounded.

Defendant states that alternative means of practicing Jumu'ah prayer services remained available to Plaintiff.  There is no dispute that Plaintiff was able to conduct his prayer services in his cell, and he in fact did so.  In addition, it is undisputed that a Muslim chaplain was available to perform cell-side services upon request.  There is also no dispute that Plaintiff could pray in his cell, was allowed to keep a Quran in his cell, and was allowed to participate in and celebrate the three major Muslim holidays.

Therefore, the undisputed facts show that Defendant Liles did not place Plaintiff on C-Status, that the restrictions placed on C-Status inmates were reasonably related to the legitimate penological interests of safety and security, and that alternative means of conducting his prayer services remained available to Plaintiff.   Given the facts, Plaintiff cannot establish every essential element of his claim, and Defendant is entitled to summary judgment on Plaintiff's free exercise claim.

B.    RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.  Plaintiff bears the initial burden of demonstrating that Defendant substantially burdened the exercise of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989,

7

994-95 (9th Cir. 2005).  If Plaintiff meets his burden, Defendant must demonstrate that "any substantial burden of [Plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest *and* the least restrictive means of furthering that compelling governmental interest."  Id. (emphasis in original).  "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."  Id.

The Eleventh Amendment bars suits for damages against state officials in their official capacities.  Holley v. California Dep't of Corr., 599 F.3d 1108, 1114 (9th Cir. 2010).  Plaintiff states he is suing Defendant Liles solely in his individual capacity.  Subsequent to the parties' briefing, the Ninth Circuit definitively held that a RLUIPA claim may not be maintained against prison officials in their individual capacities.  Wood v. Yordy, 753 F.3d 899 (9th Cir. 2014).  Therefore, Plaintiff is left only with a claim for injunctive relief against Defendant on his RLUIPA claim.

When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions.  Alvarez v. Hill, 667 F.3d 1061, 1063-64 (9th Cir. 2012); Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 48 F.2d 517, 519 (9th Cir. 1991).  Here, Plaintiff seeks injunctive relief relating to his incarceration at CCI.  However, he is now incarcerated at Calipatria State Prison and is no longer subject to conditions at CCI.  Accordingly, he is not entitled to injunctive relief.  Therefore, Plaintiff's RLUIPA claim must be dismissed.

C.  Qualified Immunity

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

As the Court has found that no constitutional violation has occurred, it need not further discuss the issue of qualified immunity.

## V. FINDINGS AND RECOMMENDATIONS

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant's motion for summary judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections must be filed within fourteen (14) days from the date of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 29, 2014**              /s/ *Dennis L. Beck*
                                   UNITED STATES MAGISTRATE JUDGE

9